In re Interest of Zachary D. and Alexander D.,
children under 18 years of age.
Nebraska Department of Health and Human
Services, appellant, v. Zachary D.
and Alexander D., appellees.

___ N.W.2d ___

Filed January 2, 2015.    No. S-14-263.

1.  **Contempt: Appeal and Error.** In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed is reviewed for abuse of discretion.
2.  **Courts: Contempt.** Nebraska's courts, through their inherent judicial power, have the authority to do all things necessary for the proper administration of justice. This authority includes the power to punish for contempt which should be used sparingly, but is incident to every judicial tribune.
3.  **Courts: Constitutional Law: Contempt.** The power to punish for contempt is derived from a court's constitutional power, without any expressed statutory aid, and is inherent in all courts of record.
4.  **Juvenile Courts.** Separate juvenile courts and county courts sitting as juvenile courts are courts of record.
5.  **Courts: Contempt.** Neb. Rev. Stat. § 25-2121 (Reissue 2008) provides that every court of record shall have the power to punish by fine or imprisonment actions that are in contempt of court.
6.  **Contempt: Words and Phrases.** When a party to an action fails to comply with a court order made for the benefit of the opposing party, such act is ordinarily civil contempt, which requires willful disobedience as an essential element. "Willful" means the violation was committed intentionally, with knowledge that the act violated the court order.
7.  **Contempt: Proof.** Outside of statutory procedures imposing a different standard, it is the complainant's burden to prove civil contempt by clear and convincing evidence.
8.  **Evidence: Words and Phrases.** Clear and convincing evidence means that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved.
9.  **Contempt.** The collateral bar rule requires that a party may not, as a general rule, violate a court order and raise the issue of its unconstitutionality collaterally as a defense in a contempt proceeding.

Appeal from the Separate Juvenile Court of Douglas County: Christopher Kelly, Judge. Affirmed.

Marcie Bergquist, Special Assistant Attorney General, of Department of Health and Human Services, for appellant.

Patrick A. Campagna, Britt H. Dudzinski, and A. Jill Stigge, Senior Certified Law Student, of Lustgarten & Roberts, P.C., L.L.O., for appellees.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Heavican, C.J.

## INTRODUCTION

The separate juvenile court of Douglas County found the Department of Health and Human Services and Nebraska Families Collaborative (NFC) in contempt of court. The department appeals. We affirm.

## FACTUAL BACKGROUND

In April 2005, Zachary D. and Alexander D. were adjudicated in Greeley County, Nebraska, as juveniles under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2004) and removed from their mother's care and custody. Parental rights as to Zachary and Alexander were terminated in October 2006. Zachary was eventually adopted, apparently by his grandmother, but Alexander remained in foster care.

Alexander has been diagnosed with attention deficit hyperactivity disorder, oppositional defiance disorder, and posttraumatic stress disorder. In addition, Alexander has borderline intellectual functioning and suffers from the effects of fetal alcohol syndrome. Alexander was 3 years old when he was removed from his mother's care; at the time of the hearing in this case, he was 12 years old. According to the record, Alexander has been placed in at least 17 different foster placements with 12 different families, and additionally has been hospitalized six times for a total of 73 days and has spent a year in a day treatment program, 18 months in two different residential treatment centers, and over 6 months in a group home. As such, it has been difficult to find placements for Alexander.

Alexander's case was eventually moved to the Douglas County Separate Juvenile Court. In Douglas County, the department contracts with NFC for case management services.

On or around September 18, 2012, after his case was moved to Douglas County, Alexander was placed in a program with Envisions of Norfolk, Inc. (Envisions), located in Norfolk, Nebraska. At this facility, Alexander was provided one-on-one care. According to Alexander's NFC caseworker, locating this facility and program for Alexander took a "substantial" amount of time. The juvenile court ordered that Alexander remain in the Envisions program until further order of the court. The record suggests that Alexander was doing well in this program.

However, in late September or early October 2013, Alexander's caseworker became aware that NFC and Envisions were involved in licensing negotiations. Though not entirely clear from the record, it appears that NFC's contract with the department required these programs to be licensed as foster care placements, but none of the programs were actually licensed as such.

In any event, Alexander's caseworker did not alert the guardian ad litem, the county attorney, or the juvenile court of these ongoing negotiations. At some point in early October, NFC began contacting other foster care providers to look for placements for Alexander in the event that he was removed from his Envisions placement. Again, neither the caseworker, nor anyone else from NFC, alerted any of the stakeholders that other providers were being contacted. According to the caseworker, she made an "oversight" that was not "malicious" and explained that she did not contact anyone at first, because the move to find other providers was "Plan B" and there were no plans to change Alexander's placement.

A meeting with the caseworker, guardian ad litem, and other stakeholders was held on October 18, 2013. The caseworker did not inform anyone at the meeting of the ongoing negotiations or NFC's ongoing search for another placement. The caseworker testified that she did not do so because at that time, Alexander's placement was not "in jeopardy."

On October 21, 2013, Envisions informed NFC that it did not wish to pursue licensure as a foster care placement. In addition, Envisions noted that the daily rate being offered it for Alexander's care was inadequate, because it provided less than a one-half staffing position, when Alexander required one-on-one care. As such, Envisions gave notice that it was terminating its services to Alexander on November 1. Though the caseworker was informed of this development, she did not notify any of the stakeholders that Alexander's placement at Envisions was to end.

Negotiations continued between NFC and Envisions, and originally a plan was in place for Alexander to continue at Envisions until November 30, 2013. But this plan fell through, apparently due to NFC's failure to pay Envisions in a timely manner. On October 29, Envisions reaffirmed that Alexander would need to be removed from the program on November 1. It was only then that the caseworker notified the guardian ad litem and the county attorney of the impending move.

Alexander was moved into a new foster home on November 1, 2013. The guardian ad litem filed an application for contempt against the department and NFC on October 30. Alexander's new placement was approved by the juvenile court on November 4.

Following a hearing on the contempt application, the juvenile court found the department and NFC in contempt and ordered them to pay a fine of $5,000 or purge the contempt by (1) preparing and distributing "a written policy providing that it initiate and have immediate contact with the children's Guardians ad Litem, the Deputy County Attorney, as well as all case professionals, whenever a child's placement is threatened by disruption for any reason," and (2) preparing and distributing

> a written policy which prohibits the deletion or destruction of email and/or hard copy correspondence between case managers, their supervisors, utilization management personnel, and placement providers for minor children, while a case is open and pending before the Juvenile Court and for no less than six months following case closure and termination of the Court's jurisdiction.

The basis for this second policy was the deletion by Alexander's caseworker of e-mails relating to Alexander and his change in placement.

The department appeals.

## ASSIGNMENTS OF ERROR

On appeal, the department assigns, restated and consolidated, that the juvenile court erred in (1) finding clear and convincing evidence to hold the department in contempt and (2) sentencing the department on the contempt finding, because the court's sentence was a violation of the separation of powers doctrine.

## STANDARD OF REVIEW

[1] In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed is reviewed for abuse of discretion.[1]

## ANALYSIS

*Contempt.*

In its first assignment of error, the department contends that the juvenile court erred in finding it to be in contempt of court. The department argues that there was no evidence to show that its violation of the court's order was willful and that, moreover, the evidence showing contempt was not clear and convincing.

[2-5] We have held that Nebraska's courts, through their inherent judicial power, have the authority to do all things necessary for the proper administration of justice.[2] This authority includes the power to punish for contempt which

---

[1] *Spady v. Spady*, 284 Neb. 885, 824 N.W.2d 366 (2012).

[2] *In re Interest of Samantha L. & Jasmine L.*, 284 Neb. 856, 824 N.W.2d 691 (2012).

should be used sparingly,[3] but is incident to every judicial tribune.[4] It is derived from a court's constitutional power, without any expressed statutory aid, and is inherent in all courts of record.[5] Separate juvenile court and county courts sitting as juvenile courts are courts of record.[6] And Neb. Rev. Stat. § 25-2121 (Reissue 2008) further provides that "[e]very court of record shall have power to punish by fine or imprisonment" actions that are in contempt of court.

[6] When a party to an action fails to comply with a court order made for the benefit of the opposing party, such act is ordinarily civil contempt, which requires willful disobedience as an essential element.[7] "Willful" means the violation was committed intentionally, with knowledge that the act violated the court order.[8]

[7,8] Outside of statutory procedures imposing a different standard, it is complainant's burden to prove civil contempt by clear and convincing evidence.[9] Clear and convincing evidence means that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved.[10]

Initially, we reject the department's assertion that the juvenile court's failure to specifically use the term "willful" is relevant. While it is true that the court did not use that term, it did make oral findings that clearly indicated its belief that NFC's actions were intentional and, thus, willful.

The department directs us to the statement of the juvenile court made in open court wherein the court noted that it did

---

[3] See *State ex rel. Collins v. Beister*, 227 Neb. 829, 420 N.W.2d 309 (1988), *overruled on other grounds, Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010).

[4] See *In re Interest of Samantha L. & Jasmine L., supra* note 2.

[5] *Id.*

[6] *Id.*

[7] *Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012).

[8] *Id.*

[9] *Id.*

[10] *R & B Farms v. Cedar Valley Acres*, 281 Neb. 706, 798 N.W.2d 121 (2011).

not "think that the Department or NFC acted with the intention to lose that placement or that they concocted some scheme to not have the left hand understand what the right hand was doing within the agency so that the placement was lost." But this shows only that the juvenile court did not believe that the department acted maliciously or with a bad motive. Such a showing is not required to find contempt; rather, the violation need only be intentional.

We also conclude that there was clear and convincing evidence to support the juvenile court's contempt finding. Neb. Rev. Stat. § 43-285(3) (Cum. Supp. 2012) provides in part that the department

> shall file a report and notice of placement change with the court and shall send copies of the notice to all interested parties at least seven days before the placement of the juvenile is changed from what the court originally considered to be a suitable family home or institution to some other custodial situation.

The court's September 10, 2013, order provided that Alexander "shall remain as placed in the Envisions Program, until further Order of the Court." Yet, Alexander was moved on November 1, 2013, without further order of the court. The juvenile court's order approving the emergency placement was not entered until November 4. The evidence plainly shows that without notice or permission, Alexander was moved on November 1, in violation of the court's order and without the notice required by § 43-285(3).

Moreover, if the guardian ad litem, county attorney, and juvenile court had been notified in a timely manner, the juvenile court could have approved a change in placement prior to the date set by Envisions to move Alexander. And, though speculative, it is possible that such notification and possible intervention by the guardian ad litem or others could have prevented or delayed yet another move for a child who has already been in so many different placements. In the end, we agree with the guardian ad litem's observation that, apparently, the department felt it was easier to beg for forgiveness than to ask for permission.

We review the juvenile court's factfinding for clear error, and we find none. We further find no abuse of discretion in the juvenile court's finding of contempt. The department's first assignment of error is without merit.

*Sentence.*

The department also assigns that the juvenile court erred in its sentence for contempt. The department and NFC were ordered to prepare and distribute to all departmental and NFC employees a written policy regarding notifications in the event of a possible change in placement, and also to prepare and distribute a written policy regarding the retention of electronic records. The department argues that such was in violation of the doctrine of separation of powers, because by so ordering, the judicial branch has infringed upon the executive branch's ability to administer itself, and further argues that if the coercive part of the sentence fails, the remaining sanction is punitive, which is impermissible.

[9] As an initial matter, the guardian ad litem argues that the collateral bar rule prevents this court from considering the department's constitutional argument. That rule requires that "a party may not, as a general rule, violate a court order and raise the issue of its unconstitutionality collaterally as a defense in a contempt proceeding."[11] But on these facts, we find the collateral bar rule inapplicable. The department has preserved its constitutional argument by appealing from the order which it contends is unconstitutional.

Still, we find no merit to the department's contention. The crux of the department's argument is that the doctrine of separation of powers is violated when the judicial branch imposes an order on the executive branch requiring it to institute and distribute a particular policy, because such a policy amounts to a rule or regulation and it is solely the function of the executive branch to promulgate its own rules and regulations.

But the policies which the juvenile court has ordered the department and NFC to create are not rules and regulations.

---

[11] *Sid Dillon Chevrolet v. Sullivan*, 251 Neb. 722, 733, 559 N.W.2d 740, 748 (1997).

Rules and regulations are defined by Neb. Rev. Stat. § 84-901(2) (Reissue 2014) as

> any rule, regulation, or standard issued by an agency, including the amendment or repeal thereof whether with or without prior hearing and designed to implement, interpret, or make specific the law enforced or administered by it or governing its organization or procedure. Rule or regulation shall not include . . . rules and regulations concerning the internal management of the agency not affecting private rights, private interests, or procedures available to the public . . . .

The two policies at issue here are akin to those that concern "the internal management of the agency." Moreover, while these policies certainly relate to statutes governing the juvenile court process, they are not "designed to implement, interpret, or make specific the law enforced or administered by it or governing its organization or procedure." Rather, these policies are intended to provide notice to all departmental and NFC employees of certain requirements of state law relating to notice of changes in placement and records review and retention policies.

For example, the first notice referenced by the juvenile court in its purge plan—regarding notification to be given to the stakeholders in the event of a threatened change in placement—in part refers to § 43-285(3), which provides that the department must "file with the court a report stating the location of the juvenile's placement and the needs of the juvenile" at least every 6 months, and shall also file a report and notice of placement change with the court and "all interested parties at least seven days before the placement of the juvenile is changed from what the court originally considered to be a suitable family home or institution."

In addition, the failure of the department to notify stakeholders that Alexander might be moved could interfere with the guardian ad litem's ability to carry out his or her powers and duties. A guardian ad litem is to

> make every reasonable effort to become familiar with the needs of the protected juvenile which (i) shall include consultation with the juvenile within two weeks after

the appointment and once every six months thereafter and inquiry of the most current caseworker, foster parent, or other custodian and (ii) may include inquiry of others directly involved with the juvenile or who may have information or knowledge about the circumstances which brought the juvenile court action or related cases and the development of the juvenile, including biological parents, physicians, psychologists, teachers, and clergy members [and is also]

. . . responsible for making recommendations to the court regarding the temporary and permanent placement of the protected juvenile.[12]

And the second notice referenced in the juvenile court's purge plan—regarding records retention—is necessitated both by the specifics of the juvenile code, which define confidential records and allow access to those records by order of the court,[13] and by more general state law, which states that such records should not be "mutilated, destroyed, transferred, removed, damaged, or otherwise disposed of, in whole or in part, except as provided by law."[14]

Given the specific and narrow reach of the notices ordered by the juvenile court, we find no abuse of discretion in the sanction imposed and, thus, find no error. The department's second assignment of error is without merit.

## CONCLUSION

The juvenile court's finding of contempt and sanction is affirmed.

Affirmed.

---

[12] Neb. Rev. Stat. § 43-272.01(d) and (f) (Cum. Supp. 2014).

[13] Neb. Rev. Stat. § 43-2,109 (Reissue 2008).

[14] Neb. Rev. Stat. § 84-1213 (Reissue 2014).

Stephan, J., dissenting.

I respectfully dissent. While I do not condone the actions of the department or NFC in this case, I cannot agree with the majority that those actions constituted civil contempt.

As the majority correctly notes, willful disobedience of a court order is an essential element of civil contempt.[1] To establish this element, it must be shown by clear and convincing evidence that the party acted intentionally and with knowledge that the act was in violation of a court order.[2] The starting point of the analysis should be the language of the order allegedly violated. Here, the guardian ad litem alleged that the department and NFC were in contempt for violating two provisions of the juvenile court's September 10, 2013, order. The first provision stated: "IT IS HEREBY ORDERED that the minor child is to remain in the custody of the . . . department . . . for adoption planning and placement consistent with the Court's permanency objective. Alexander . . . shall remain as placed in the Envisions Program, until further Order of the Court." The second provision stated: "IT IS FURTHER ORDERED that the . . . department [and NFC] shall secure and present to all parties a list of all medical, mental health, educational and therapeutic services required by the minor child, Alexander . . . ." I note that when the application for contempt was filed on October 30, Alexander remained in the placement ordered by the court; he was not removed from the Envisions program until November 1, when the program would no longer keep him.

In its contempt order, the juvenile court found a violation of only that part of its prior order which required Alexander to remain as placed in the Envisions program until further order of the court. The court found this directive was violated, "due solely to financial dealings and misdealings by [NFC]," by delaying a payment which would have enabled Alexander's placement in the Envisions program to continue until the end of November. It further found that the department and NFC

---

[1] See, *Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012); *Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010), *disapproved on other grounds, Hossaini, supra* note 1.

[2] See, *Hossaini, supra* note 1; *Klinginsmith v. Wichmann*, 252 Neb. 889, 567 N.W.2d 172 (1997), *overruled on other grounds, Smeal Fire Apparatus Co., supra* note 1.

"failed to keep a critical party, the child's Guardian ad Litem, apprised of developments as the situation, and the child's placement, unraveled."

The record certainly reflects that the circumstances which led to the termination of the placement could have been managed in a more efficient and effective manner by the department and NFC. When NFC first learned on October 21, 2013, that Envisions had decided to terminate the placement because of ongoing payment and licensing issues, it did not immediately notify the guardian ad litem. However, the NFC caseworker specifically denied that NFC formulated any plan to move Alexander without court approval and testified that the "plan all along" was for him to remain at Envisions. As of October 25, NFC believed it had negotiated for Alexander to remain at Envisions at least until the end of November. When that agreement collapsed on October 29, because "internal hiccups" within NFC delayed payment to Envisions, the NFC caseworker contacted the guardian ad litem and informed him of the situation. On the same date, internal correspondence between NFC employees noted that "Alex is court ordered to be at Envisions" and that it would be necessary to secure "a new order to move him." In the end, it was clearly Envisions, not the department or NFC, which made the decision that Alexander would no longer be allowed to remain in the placement after November 1.

It is clear from the record that mistakes were made. But that does not mean that there was a willful violation of the placement order by either the department or NFC.[3] I find no clear and convincing evidence in the record that either the department or NFC took any action, or refrained from taking some action, with the knowledge that by doing so, they were violating the placement order. And, apparently, neither did the juvenile court. It made no specific finding of willful disobedience of the placement order. The majority acknowledges this, but concludes that such a finding was unnecessary in light of "oral findings" made by the juvenile court.

---

[3] *See Klinginsmith, supra* note 2.

As to whether a specific finding of willful disobedience is required, we have said that "[t]o find a party in contempt in juvenile court, there must be a finding of willful violation of a juvenile court's order."[4] This record contains no such finding, either written or oral. The oral finding to which the majority apparently refers is the following comment by the juvenile court at the sentencing hearing:

> I don't think that the Department or NFC acted with the intention to lose that placement or that they concocted some scheme to have the left hand not understand what the right hand was doing within the agency itself so that the placement was lost. You had somebody from the agency work with the placement and reach some type of an accord contingent on money being paid. The other hand and the agency did not get the money paid, and the placement came back and said, it's over, and that was it. And all of a sudden the agency itself, NFC, [the department], the guardian ad litem, and the Court were faced with a situation where we had a child who needed services who was out on the street, so to speak. All of that could have been avoided.

This is a finding of bureaucratic malfeasance, but not willful disobedience of a court order. Any doubt on that point is dispelled by the actual language of the contempt order, to which the majority does not refer. Specifically, the juvenile court found that the department, "*through its lack of supervision of its contracted agent*, [*NFC*], is in direct violation of the Court's September 10, 2013 Court Order affecting the child's Placement, and is therefore in contempt of Court." (Emphasis supplied.)

While I do not take issue with the factual finding of the department's "lack of supervision," I think the juvenile court's conclusion that failure to supervise constitutes civil contempt is incorrect as a matter of law. The placement order in question is silent with respect to the department's responsibility to supervise NFC, and thus a failure to supervise would not

---

[4] See *In re Interest of Thomas M*., 282 Neb. 316, 325, 803 N.W.2d 46, 54 (2011).

itself violate any provision of the order. A court cannot hold a person or party in contempt unless the order or consent decree gave clear warning that the conduct in question was required or proscribed.[5] A fair inference can be drawn that had the department supervised NFC more diligently, or notified the guardian ad litem of the problems with the placement at an earlier date, the decision of Envisions to terminate the placement might have been averted or delayed. But that is not the issue. Rather, the question is whether the department intentionally took or refrained from taking some action with the knowledge that its conduct would violate the court order. While the department's failure to supervise NFC may have been careless or negligent, there is nothing in the record to suggest the department acted intentionally and with knowledge that its conduct would violate the placement order.

The majority attempts to buttress its position by observing that the department did not file a report and notice of placement change in the time period required by Neb. Rev. Stat. § 43-285(3) (Cum. Supp. 2012). While that may be true, the statute is not incorporated in the placement order and the juvenile court made no reference to a violation of this specific statute in its contempt order. More important, there is no evidence that the department's delay in giving statutory notice was an intentional act done in knowing violation of the placement order. To the contrary, the record reflects that up until October 29, 2013, when negotiations between NFC and Envisions broke down and NFC notified the guardian ad litem that the placement would end on November 1, the department and NFC believed that the placement would continue at least through the end of November.

Because the essential element of willfulness was not proved, the department's failure to properly supervise NFC or its failure to give the guardian ad litem earlier notice of the dispute with Envisions could not constitute civil contempt as a matter of law. I would, therefore, reverse, and vacate the contempt order.

CONNOLLY, J., joins in this dissent.

---

[5] *Smeal Fire Apparatus Co., supra* note 1.