IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

VILLAGE OF UNION V. BESCHEINEN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

VILLAGE OF UNION, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE,

V.

WILLIAM J. BESCHEINEN, APPELLANT.

Filed June 9, 2015.    No. A-14-821.

Appeal from the District Court for Cass County: JEFFREY J. FUNKE, Judge. Affirmed.

Kevin K. Knake, of Law Office of Richard L. Alexander, for appellant.

Mindy Rush Chipman, of Rush Chipman Law Office, for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

MOORE, Chief Judge.

The district court for Cass County found William J. Bescheinen to be in contempt of a prior order which had required him to abate public nuisances on nine of his properties. For a sanction, the court sentenced Bescheinen to a term of 90 days in jail, but stayed the imposition of the sentence for 180 days to allow Bescheinen to abate the nuisances and purge himself of the contempt. Bescheinen appeals from the order finding him in contempt and the sanction imposed. We find no merit to Bescheinen's arguments and affirm.

FACTUAL BACKGROUND

The Village of Union (Village) is a municipal corporation located in Cass County, Nebraska, and organized pursuant to Neb. Rev. Stat. § 17-201 et seq. (Reissue 2012). Bescheinen is a resident of the Village and owns various parcels of real property within the Village's boundaries. On April 5, 2011, the Village's Board of Trustees declared by resolutions that nine of Bescheinen's properties were public nuisances and required Bescheinen to abate the nuisances

- 1 -

within 15 days of receiving notice of the resolutions. Commonly described, Bescheinen's nine properties that were declared to be nuisances include: (1) the former schoolhouse; (2) the adjacent school property; (3) the south school property; (4) the laundromat; (5) the feed store building; (6) 125 West Main Street; (7) 123 West Main Street; (8) the County building; and (9) 111 Rock Street. Bescheinen appealed the resolutions passed by the Board of Trustees and requested a hearing before the Board. Following this hearing, the Board of Trustees denied Bescheinen's appeal.

On July 13, 2011, the Board of Trustees declared by resolution that Bescheinen had failed to abate the public nuisances on his properties as declared in the April 5 resolutions. The Board of Trustees also stated that Bescheinen would be fined $10 per day, beginning on July 14, 2011, until he abated the public nuisances on each of the nine properties.

In addition to the daily fines, the Village also initiated litigation in the district court against Bescheinen seeking various relief. Specifically the Village sought (1) a determination that Bescheinen's nine properties were public nuisances in violation of the Village ordinances; (2) an order requiring Bescheinen to abate the nuisances or, upon his failure to do so, an order permitting the Village to abate the nuisances at Bescheinen's expense; (3) an injunction prohibiting Bescheinen from maintaining the nuisances on his properties; (4) a daily $10 fine assessed against each property for Bescheinen's failure to abate the nuisances; and (5) an injunction prohibiting Bescheinen from trespassing on the Village property located at 127 West Main Street. Bescheinen counterclaimed against the Village seeking declaratory relief. He contended that the Village's nuisance ordinances were not enacted according to the proper Village procedure and also failed to comply with Nebraska statutory law. Both parties moved for summary judgment.

On January 18, 2013, the district court filed an order in which it granted summary judgment in favor of the Village and denied Bescheinen's motion. The court found all nine of Bescheinen's properties to be public nuisances and permanently enjoined Bescheinen from maintaining the nuisances on these properties. Further, the court required Bescheinen to take the following action to abate the nuisances within 180 days of the order:

a. Former school house: (1) Repair and replace the bricks in the northeast corner of the schoolhouse or demolish the entire building; (2) Repair and replace any broken out windows or demolish the entire building; (3) Repair and replace the roof of the building or demolish the entire building; (4) Remove all wrecked, inoperable, or disabled automobiles or parts of automobiles and all wrecked, inoperable, or disabled machinery/equipment or parts of machinery/equipment; and (6) Remove all scrap iron from the premises or place such scrap iron in covered bins or galvanized iron receptacle[s].

b. Adjacent school property: (1) Remove all trash and litter from the yard of such premises; (2) Remove all wrecked, inoperable, or disabled automobiles or parts of automobiles and all wrecked, inoperable, or disabled machinery/equipment or parts of machinery/equipment; and (3) Remove all scrap iron from the premises or place such scrap iron in covered bins or galvanized iron receptacle[s].

c. South school property: (1) Remove all trash and litter from the yard of such premises; (2) Remove all wrecked, inoperable, or disabled automobiles or parts of automobiles and all wrecked, inoperable, or disabled machinery/equipment or parts of

machinery/equipment; and (3) Remove all scrap iron from the premises or place such scrap iron in covered bins or galvanized iron receptacle[s].

    d. Laundromat: (1) Repair the roof of the building or demolish the entire building; (2) Repair and replace any broken out windows or demolish the entire building; (3) Repair and replace the interior ceiling of the building or demolish the entire building; (4) Remove the trailer from the premises; (5) Paint the building; (6) Remove all trash or litter from the interior of the building; and (7) Repair the front façade of the building or demolish the entire building.

    e. Feed store: (1) Repair the roof of the building or demolish the entire building; (2) Repair and replace any broken out or missing windows or demolish the entire building; (3) Repair and replace all rotting wood on the exterior of the building or demolish the entire building; and (4) Repair the structure of the building so that the west wall stops pulling away from the south wall or demolish the entire building.

    f. 125 West Main Street: (1) Remove all trash and litter from the yard of such premises; (2) Remove all wrecked, inoperable, or disabled automobiles or parts of automobiles and all wrecked, inoperable, or disabled machinery/equipment or parts of machinery/equipment; (3) Remove the scrap iron from the rear of the property or place such scrap iron in covered bins or galvanized iron receptacle[s]; (4) Remove the floor of the former café from the premises; (5) Repair the roof of the building or demolish the entire building; (6) Repair the foundation of the building or demolish the entire building; and (7) Repair and replace the rotten wood on the exterior of the building or demolish the entire building.

    g. 123 West Main Street: (1) Remove all trash and litter from the yard of such premises; (2) Remove all wrecked, inoperable, or disabled automobiles or parts of automobiles and all wrecked, inoperable, or disabled machinery/equipment or parts of machinery/equipment; (3) Remove the scrap iron from the rear of the property or place such scrap iron in covered bins or galvanized iron receptacle[s]; (4) Remove the floor of the former café from the premises; (5) Repair the roof of the building or demolish the entire building; (6) Repair the founding of the building or demolish the entire building; (7) Repair and replace the rotten wood on the exterior of the building or demolish the entire building; and (8) Repair and replace all broken out or missing windows or demolish the entire building.

    h. County building: (1) Remove all trash and litter from the yard of such premises; (2) Remove all wrecked, inoperable, or disabled automobiles or parts of automobiles and all wrecked, inoperable, or disabled machinery/equipment or parts of machinery/equipment; and (3) Remove all scrap iron from the premises or place such scrap iron in covered bins or galvanized iron receptacle[s].

    i. 111 Rock Street: (1) Remove all trash and litter from the yard of such premises; (2) Remove all wrecked, inoperable, or disabled automobiles or parts of automobiles and all wrecked, inoperable, or disabled machinery/equipment or parts of machinery/equipment; (3) Remove all scrap iron from the premises or place such scrap

iron in covered bins or galvanized iron receptacle[s]; and (4) cease storing and leaving equipment on the premises such as drainage tubing and tractors.

In addition to those required actions, the court also ordered Bescheinen to pay a $1,000 fine to the Village and enjoined Bescheinen from trespassing on the Village's property at 127 West Main Street. Bescheinen did not appeal from the order.

On August 2, 2013, the Village filed an application for contempt alleging that Bescheinen had failed to abate the nuisances as required in the January 18, 2013, order. The Village also alleged that Bescheinen had not paid the fines assessed against him in the order. On April 11, 2014, the district court held a show cause hearing on the Village's contempt application.

The Village presented extensive evidence to support its contention that Bescheinen had willfully failed to abate the nuisance properties. The court received numerous pictures of the nine properties received into evidence which demonstrated the conditions of the property at the time of the January 2013 order and prior to the show cause hearing. Duane Hardbarger, the chairman of the Village's Board of Trustees, testified to the findings of his inspections of Bescheinen's properties in May 2012 and January 2014. Hardbarger testified that Bescheinen had not made significant progress to abate the nuisances on the three schoolhouse properties. Specifically, Bescheinen had not fixed the bricks in the northeast corner of the building, replaced or repaired windows, replaced or repaired the roof, or removed trash and scrap metal from the properties. As to the laundromat, Hardbarger testified that Bescheinen had done nothing to abate the nuisance other than painting the front of the property. As of the hearing, a trailer remained parked behind the building, the inside of the building remained full of junk, and the front façade was severely cracked. The feed store also remained a nuisance property and its roof had blown off into neighboring properties prior to the hearing. On 123 and 125 West Main Street, 111 Rock Street, and the County building, Bescheinen had failed to remove all inoperable machinery from the properties as required and continued to use the properties to store equipment, vehicles, and scrap metal. Hardbarger stated that he did not observe Bescheinen make any attempts to abate the nuisances in the period between the entry of the summary judgment order and the Village filing its application for contempt.

In addition to Hardbarger's testimony, the Village also presented testimony from Joe McQuinn, a superintendent for Anderson Excavating. McQuinn has 42 years' experience in building demolition, including 15 years' experience preparing bids for demolition work, and had been retained by the Village to estimate the cost of demolishing a number of Bescheinen's properties. McQuinn inspected the schoolhouse property, the feed store, 123 West Main Street, and the laundromat and prepared a bid for the demolition of each of these properties. The process for demolishing the buildings on each of these properties would entail removing any asbestos, demolishing the building, hauling away debris, taking out footings, and backfilling to the surrounding grade. McQuinn estimated the demolition of the schoolhouse would take 50-60 days, while the other buildings could each be demolished in approximately 30 days. Finally, McQuinn provided an estimated cost of demolishing each building: $135,182 for the schoolhouse; $83,700 for the feed store; $26,160 for 123 West Main Street; and $34,500 for the laundromat.

In addition to providing his own estimates, McQuinn also testified to the reasonableness of the demolition bids Bescheinen obtained from Dale Sharp in October 2013. According to the record, Sharp had estimated demolition costs of $315,000 for the schoolhouse; $360,000 for the feed store; $190,000 for 123 West Main Street; and $125,000 for the laundromat. McQuinn testified that Sharpe's bids for demolishing these same properties were "outrageous", "a little high", and not reasonable.

Along with its evidence related to the condition of the nine properties, the Village also adduced evidence related to Bescheinen's finances. As of April 2013, Bescheinen had an approximate net worth of $637,000. He also earns approximately $50,000 a year from his soil conservation contracting business along with a monthly Social Security payment. Bescheinen also testified that it was a possibility he would sell his farmland, valued at $785,000, in order to comply with the court's order.

Bescheinen testified that he had completed a portion of the abatement work required by the court's order. He stated that he had painted the floor of the laundromat, removed the café floor from the rear of 123 and 125 West Main Street, repaired the roof and windows on 125 West Main Street, removed the drainage tubing from 111 Rock Street, and removed a portion of the trash that had accumulated at the County building. In addition to these efforts, Bescheinen hauled numerous loads of scrap metal from the schoolhouse properties and exchanged this metal for over $20,000.

Despite his efforts, Bescheinen admitted that work remained to be done on a number of the properties and he did not believe that he could complete this work even if he had another six months. Bescheinen testified that the court's order required a lot of work to be completed and he has not had enough time to do everything required of him. The record also demonstrates that Bescheinen has attempted to complete the abatement work with only the help of his two sons and infrequent assistance from a few friends. Steven Heyen testified that he has performed work for Bescheinen in exchange for a reduction of debt he owed. Heyen has assisted Bescheinen move cars, repair a roof and windows, and cut up firewood. Another friend, Mark Tilton, has advertised some of Bescheinen's items for sale on Craigslist and has sold various items to "pickers" who visit the properties. Tilton also attempted to sell the schoolhouse property for over $1 million.

On May 2, 2014, the district court entered an order finding Bescheinen in civil contempt for failing to abate the nuisances on his properties. The court explained that its prior order had required Bescheinen to complete a substantial amount of work to abate the nuisances on his properties and the court acknowledged that Bescheinen had taken some steps toward completing this work. However, the progress Bescheinen had made paled in comparison to the amount of work that remained, which the court listed in detail. The court also noted that Bescheinen did not return to the court to seek additional time to complete the abatements, hire sufficient laborers to complete the work, or allow others to remove the abatements for him. Finally, the court concluded that Bescheinen had sufficient financial resources to complete the abatement. The court scheduled a sentencing hearing for a later date.

On August 11, 2014, Bescheinen appeared for a sentencing hearing for his contempt. At the hearing, the court permitted each party to present evidence as to the current condition of the properties. The parties' evidence demonstrated that Bescheinen made substantial progress toward complying with the court's order of abatement in the period between the show cause and

sentencing hearings. Nonetheless, Bescheinen acknowledged that work remained for him to attain full compliance with the court's order. The schoolhouse building and the feed store still required substantial repairs or to be demolished. Bescheinen testified that he believed he had located a contractor capable of completing the required work on the schoolhouse building and also informed the court that he was looking at trying to demolish the feed store.

Though the court acknowledged the progress Bescheinen had made, it found that the abatement had not been completed. To ensure compliance with its prior order, the court declared that it was imposing a sentence which was "remedial in nature". The court sentenced Bescheinen to serve 90 days in jail, but announced that it would stay the sentence for six months to allow Bescheinen time to fully alleviate the nuisances and purge himself of the contempt. In the subsequent written order, the court stated that this period of incarceration was coercive in nature and not punitive.

Bescheinen appeals.

## ASSIGNMENTS OF ERROR

In his brief, Bescheinen assigns a total of 12 errors. However, the argument portion of the brief only contains three separate arguments. For an appellate court to consider an alleged error, a party must specifically assign and argue it. *Melanie M. v. Winterer*, 290 Neb. 764, 862 N.W.2d 76 (2015). This being the case, we will only consider those errors Bescheinen has properly assigned and argued in his brief.

Bescheinen claims, summarized and restated, that the district court erred when it (1) granted summary judgment in favor of the Village, (2) found him to be in contempt of the prior order and imposed a punitive sanction, and (3) allowed the Village to offer Joe McQuinn's testimony.

## STANDARD OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed is reviewed for abuse of discretion. *In re Interest of Zachary D. and Alexander D.*, 289 Neb. 763, 857 N.W.2d 323 (2015).

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Merchant*, 285 Neb. 456, 827 N.W.2d 473 (2013). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id*. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

ANALYSIS

*Jurisdiction to Review Summary Judgment Order.*

In his first assignment of error, Bescheinen requests this court's review of the district court's order granting summary judgment to the Village. He asserts that the district court erred in granting summary judgment because there were genuine issues of material fact as to whether public nuisances existed on his properties.

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matters before it, irrespective of whether the issue is raised by the parties. *Carney v. Miller*, 287 Neb. 400, 842 N.W.2d 782 (2014). Pursuant to Neb. Rev. Stat. § 25-1912 (Reissue 2008), in order to vest an appellate court with jurisdiction, a party must file an appeal within 30 days of the entry of a judgment, decree, or final order. A party's failure to timely appeal from a final order prevents an appellate court from exercising jurisdiction over the issues raised and decided in that order. *Pinnacle Enters. V. City of Papillion*, 286 Neb. 322, 836 N.W.2d 588 (2013). For an order to be final, the order must ordinarily dispose of the whole merits of the case. See *Connelly v. City of Omaha*, 278 Neb. 311, 769 N.W.2d 394 (2009).

We do not have jurisdiction to review the district court's summary judgment order. The court entered its summary judgment order on January 18, 2013, and Bescheinen did not appeal from the order. This order conclusively determined that Bescheinen's properties contained public nuisances and ordered him to take various measures to abate the nuisances. This order disposed of the whole merits of the Village's action against Bescheinen.

When Bescheinen failed to abate the nuisances as ordered, the Village initiated contempt proceedings to enforce the relief the district court previously granted. Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to the suit and to compel obedience to orders and decrees made to enforce the rights and to administer the remedies to which the court has found them to be entitled. *Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010), overruled on other grounds, *Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012). The Village's initiation of contempt proceedings to enforce a final summary judgment order did not extend Bescheinen's time to appeal from that order.

Because Bescheinen failed to timely appeal from the district court's summary judgment order, we do not have jurisdiction to address that order in this appeal.

*Contempt and Sanction.*

Bescheinen also argues that the district court abused its discretion when it found him to be in contempt. He asserts that he did not willfully fail to abate the nuisances. Rather, he believes the evidence shows that he had been working toward compliance with the court's order but had been slowed by adverse weather, lack of interest by contractors he contacted, and his own business concerns. The Village disagrees, asserting that the evidence demonstrates Bescheinen's failure to abate the nuisances on his properties was willful.

When a party to an action fails to comply with a court order made for the benefit of the opposing party, such act is ordinarily a civil contempt, which requires willful disobedience as an essential element. *Hossaini v. Vaelizadeh*, *supra*. "Willful" means the violation was committed

intentionally, with knowledge that the act violated the court order. *Id*. Outside of statutory procedures imposing a different standard, it is the complainant's burden to prove civil contempt by clear and convincing evidence. *Id*. Clear and convincing evidence means that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *In re Interest of Zachary D. and Alexander D.*, 289 Neb. 763, 857 N.W.2d 323 (2015).

We reject Bescheinen's assertion that the evidence demonstrates that he had made substantial progress toward abating the nuisances on his properties. Clearly, there is some evidence in the record indicating that Bescheinen had made some of the repairs required in the court's January 2013 order, including repairing some of the broken windows, painting the front of the laundromat, and removing some of the trash and scrap metal from various properties. Yet, the record also includes clear and convincing evidence that these repairs only satisfied a small portion of the abatement work required in the court's order. By his own admission, Bescheinen had not abated all of the nuisances at the schoolhouse properties, 111 Rock Street, or the laundromat, and had not done any work toward abating the nuisances at the feed store property. The Village's photographic evidence at the show cause hearing demonstrated that many of Bescheinen's properties were still utilized for storing trash, litter, wrecked and inoperable vehicles and equipment, and scrap metals. Various buildings also required substantial work or complete demolition before they would comply with the court's order. The district court did not err when it concluded that Bescheinen had not complied with the January 2013 order.

We also find that the Village adduced clear and convincing evidence that Bescheinen's failure to abate the nuisances on his properties was willful. There is evidence in the record that Bescheinen possesses the necessary equipment and experience to complete the abatement work himself and the financial resources to hire third parties to do the work on his behalf. Additionally, there is further evidence that Bescheinen has been able to sell some of the scrap metal he has accumulated for over $20,000. Therefore, because he has the experience, equipment, and resources to handle the abatement work, Bescheinen's failure to comply can only be attributed to his indifference toward the court's order. His own testimony reveals that he has completed this work only when it was convenient with his work schedule and has only intermittently hired friends to help him with some of the work. If Bescheinen had truly been attempting to comply with the court's order, but found it impossible because of his business demands and the amount of time required to complete the work, he could have raised such issues with the court and requested additional time. He never attempted to take any such action. The district court did not err when it determined Bescheinen's contempt was willful.

Finally, Bescheinen contends that the district court abused its discretion by imposing a punitive sanction. He asserts the 90-day sentence which the court stayed for 180 days to give him the opportunity to comply with the January 2013 order does not provide a reasonable purge plan. We disagree.

In general, civil contempt sanctions are remedial if they coerce the contemnor's obedience for the benefit of a private party or compensate a complainant for losses sustained. *Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010), overruled on other grounds, *Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012). A coercive contempt sanction is

conditioned upon the contemnor's continued noncompliance with a court order; i.e., the defendant is in a position to mitigate the sentence by complying with the court's order. See *id*. In contrast, criminal contempt sanctions are punitive. They vindicate the court's authority and cannot be ended by any act of the contemnor. *Id*. A court can impose criminal, or punitive, sanctions only if the proceedings afford the protections offered in a criminal proceeding. *Id*.

In arguing that the sanction was punitive, Bescheinen places considerable emphasis on our previous decision in *City of Beatrice v. Meints*, 12 Neb. App. 276, 671 N.W.2d 243 (2003), *overruled on other grounds* by *Smeal Fire Apparatus Co. v. Kreikemeier*, *supra*. In *Meints*, we reviewed contempt proceedings brought to enforce a prior court order which had declared the defendant's property to constitute a public nuisance. Similar to the present case, Meints' property had been used to store substantial numbers of old automobiles and parts, equipment, furniture, and other kinds of trash and litter. The court ordered Meints to abate the nuisance by removing the items from the property within 90 days from the date of the order. When Meints did not comply with the order, the City brought contempt proceedings 7 years after the order had been entered.

The trial court found Meints in contempt and set the matter for sentencing. At the sentencing hearing, the district court sentenced Meints to 120 days in jail, but gave him the opportunity to purge himself of the contempt finding and sentence by placing the property into compliance as previously ordered. Two weeks later, the court held a subsequent hearing at which it found Meints had failed to purge himself of the contempt and ordered him to serve the sentence. Meints appealed to this court and we reversed.

In analyzing the court's sanction, we reasoned that when the court originally sentenced Meints to 120 days in jail, but gave him the opportunity to comply with the earlier order, such a sanction was coercive. At that time, Meints still "held the keys to his jail cell". *Id*. at 280, 671 N.W.2d at 248. However, when the court ordered Meints to serve the jail sentence the sanction ceased to be coercive because it was no longer subject to mitigation. The imprisonment was for a definite period of time, and the court was now punishing Meints instead of attempting to exact compliance with its earlier order.

The present case is distinguishable from *Meints*. Bescheinen received a 90-day jail sentence, but has been given 180 days to purge himself of the contempt. At this point, the sanction is still coercive because it is subject to mitigation. If Bescheinen complies with the court's prior order, he will not have to serve the sentence.

The district court did not abuse its discretion when it found Bescheinen in contempt and imposed a sanction. This assigned error is without merit.

*McQuinn's Testimony*.

As explained above, the Village retained McQuinn to testify regarding the expense of demolishing four buildings located on Bescheinen's properties. McQuinn also opined that the bids Bescheinen obtained to demolish the same buildings were unreasonable. Bescheinen objected to McQuinn's testimony at the show cause hearing on the basis that it was irrelevant. Bescheinen informed the court that he was not going to present a defense that he was financially unable to abate the nuisances. The court overruled the objections because it reasoned that it had the power

to order restitution to the Village in the contempt proceedings. Part of that restitution could include the cost of demolition and removal of the buildings on the properties.

On appeal, Bescheinen again contends that the court erred when it allowed McQuinn's testimony regarding the reasonableness of the bids Bescheinen obtained. Bescheinen asserts that this testimony was only offered to impeach his sincerity in obtaining those bids and the testimony was intended to demonstrate that his bids were artificially inflated.

We reject Bescheinen's arguments. McQuinn's testimony was clearly relevant to the issue of whether Bescheinen was able to financially comply with the court's order to repair or demolish certain buildings. Establishing a reasonable cost to demolish these buildings was necessary and relevant to support the Village's allegation that Bescheinen's failure to follow the court's order to abate the nuisances was willful. The district court did not abuse its discretion when it permitted McQuinn to testify regarding the reasonableness of the bids to demolish those buildings. This assigned error is without merit.

## CONCLUSION

Because Bescheinen did not appeal the summary judgment order within 30 days, we do not have jurisdiction to review that order. We also determine that the district court did not abuse its discretion when it found Bescheinen to be in contempt and imposed a sanction.

AFFIRMED.