Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/13/2022 09:05 AM CST

Annette Marie Kitsmiller, appellee, v.
Mark Joseph Kitsmiller, appellant.

___ N.W.2d ___

Filed December 6, 2022.    No. A-21-951.

1. **Juvenile Courts: Parental Rights: Appeal and Error.** Termination of parental rights cases raised under Neb. Rev. Stat. § 42-364(5) (Cum. Supp. 2020) are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings.

2. **Parental Rights: Proof.** Terminating parental rights requires both clear and convincing evidence that one of the statutory grounds enumerated in Neb. Rev. Stat. § 43-292 (Reissue 2016) exists and clear and convincing evidence that termination is in the best interests of the children.

3. **Parental Rights: Words and Phrases.** Termination of parental rights is a final and complete severance of the child from the parent and removes the entire bundle of parental rights. With such severe and final consequences, parental rights should be terminated only in the absence of any reasonable alternative and as the last resort.

4. **Modification of Decree: Child Custody: Visitation: Child Support: Appeal and Error.** Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion.

5. **Modification of Decree: Child Custody: Proof.** Prior to modification of a child custody order, two steps of proof must be taken by the party seeking modification. First, the party seeking modification must show by a preponderance of the evidence a material change in circumstances that has occurred after the entry of the previous custody order and that affects the best interests of the child. Second, the party seeking modification must prove that changing the child's custody is in the child's best interests.

- 474 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
KITSMILLER v. KITSMILLER
Cite as 31 Neb. App. 473

6. **Modification of Decree: Words and Phrases.** Generally speaking, a material change in circumstances is the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently.

7. **Trial: Guardians Ad Litem.** The weight given to the opinion of a guardian ad litem is in the trial court's discretion.

8. **Contempt: Appeal and Error.** In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion.

9. **Contempt.** When a party to an action fails to comply with a court order made for the benefit of the opposing party, such act is ordinarily civil contempt, which requires willful disobedience as an essential element.

10. **Contempt: Proof.** Outside of statutory procedures imposing a different standard, it is the complainant's burden to prove civil contempt by clear and convincing evidence.

12. **Attorney Fees: Appeal and Error.** A trial court's determination of requests for sanctions and for attorney fees are both reviewed for an abuse of discretion.

Appeal from the Separate Juvenile Court of Lancaster County: Shellie D. Sabata, Judge. Affirmed.

Angelica W. McClure of Kotik & McClure Law, for appellant.

Stefanie S. Flodman, of Johnson, Flodman, Guenzel & Widger, for appellee.

Pirtle, Chief Judge, and Bishop and Arterburn, Judges.

Pirtle, Chief Judge.

## I. INTRODUCTION

Mark Joseph Kitsmiller appeals from the order of the separate juvenile court of Lancaster County dismissing his complaint for modification of a divorce decree and for termination of parental rights with regard to his ex-wife, Annette Marie Kitsmiller. The juvenile court also overruled Mark's motions

- 475 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
KITSMILLER v. KITSMILLER
Cite as 31 Neb. App. 473

for sanctions and attorney fees and vacated any pending orders to show cause, which actions Mark also challenges on appeal. For the reasons that follow, we affirm.

## II. BACKGROUND

### 1. Factual Background

Mark and Annette were married in September 2012. One child, A.K., was born of this marriage in 2013. Annette has a long history of mental health challenges and substance use dating back to at least 2002 as documented in prior juvenile court cases. Those circumstances ultimately led to the severance, either by relinquishment or termination, of Annette's parental rights to six of her children between 2008 and 2011. Thus, by the time Annette's seventh child, A.K., was born in 2013, Annette had a long history of struggling as a parent. However, by all accounts, the 4 years immediately after A.K.'s birth were a reprieve from the conditions that had presented such difficulty in the years prior.

Mark's mother, Barbara Kitsmiller, testified that between 2013 and 2017, she was very close to Annette and thought she was "wonderful." Barbara added that for the first 4 years of A.K.'s life, "I didn't have any questions about Annette's parenting." Mark testified that Annette's mental health was stable during those 4 years, and he agreed with his mother's testimony that Annette was "wonderful" when her mental health was stable. However, a series of tragic events in 2017 resulted in the destabilization of Annette's mental health and a return to old patterns of behavior.

Annette testified that in June 2016, she started working for an organization that helps families navigate the juvenile court process. By the end of 2016, Annette was having difficulties in that position due to her prior experiences with the juvenile court system. Barbara recalled an incident around that time when Annette came into the house and started crying because "it was so hard for her to be in the same courtrooms where her other children had been removed." Thereafter, two close

- 476 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
KITSMILLER v. KITSMILLER
Cite as 31 Neb. App. 473

friends of Annette's died within a matter of days, and in July 2017, she had a miscarriage. It was after this series of unfortunate events that both Mark and Barbara noticed a significant decline in Annette's mental health.

The parties separated in 2018, entering into an equal "seven on/seven off" custody arrangement during the pendency of the dissolution proceedings. A decree of dissolution was entered in August 2019, under which the parties were awarded joint legal custody of A.K., and Mark was awarded sole physical custody subject to the terms of a parenting plan entered along with the decree. Annette was also ordered to pay Mark $50 per month in child support. The parenting plan specified that Annette would have only supervised visitation with A.K. until such time as Annette could demonstrate compliance with a detailed list of "safety provisions." The safety provisions, summarized, required that Annette adequately address her mental health, obtain and maintain suitable housing and adequate income, and avoid outstanding warrants or law violations beyond minor traffic violations. The plan further required that Annette grant Mark access to information regarding her mental health treatment and submit to random drug testing at Mark's request.

At no point in time since the entry of the 2019 decree had Annette demonstrated compliance with all of the safety provisions. With regard to her mental health, Annette attended periodic psychiatry appointments between 2019 and 2021. Despite some gradual improvement, Annette's psychiatrist consistently reported that Annette continued to experience "moderate" symptoms of "Generalized Anxiety Disorder and Major Depression," noting after each appointment that Annette's clinical condition remained unchanged. Mark testified that he had not noticed any improvement in Annette's mental health since her initial decline in 2017, although, neither had he noticed any further decline. After trial, the court found that the evidence established Annette was not appropriately managing her mental health needs at that time.

- 477 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
KITSMILLER v. KITSMILLER
Cite as 31 Neb. App. 473

With regard to Mark's access to information, Annette testified that she did submit a release of information for Mark to communicate with her psychiatrist. Mark testified that he had never received any information from Annette's mental health providers; however, he also testified that he was not aware whether any such release of information had been submitted. The court noted that "[i]t appears [Mark] may not have requested releases [of information] from [Annette]." Similarly, Mark testified that he had never requested that Annette submit to drug testing; however, Annette admitted to using both marijuana and methamphetamine in the months prior to trial.

With regard to housing, Annette testified that she initially resided in the parties' marital home until January 2020, when she moved into a recreational vehicle that she parked at various locations. Annette was incarcerated at the time of trial, but she testified that the recreational vehicle remained her primary residence, and it was then parked on her cousin's land. With regard to income, Annette had not obtained stable employment since leaving her position with the family advocacy organization, and her only source of income was from brief stints driving for ride-sharing services. At the time of trial, Annette owed over $1,000 in delinquent child support obligations.

Annette generally failed to abstain from criminal conduct and had active outstanding warrants at various times since the 2019 decree. Mark detailed one incident in May 2021, in which Annette unexpectedly showed up at his home for a visit with A.K. There was no visit planned for that day, and no agreed upon supervisor was present. Mark and Barbara asked Annette to leave, but she refused, and an altercation ensued. A neighbor intervened, and law enforcement was called to the scene. Mark and Barbara both sustained minor injuries, and Annette was arrested and later charged with assault and trespassing. A.K. was initially present for the incident, but Mark's father promptly took A.K. to the garage while the foregoing events played out.

- 478 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
KITSMILLER v. KITSMILLER
Cite as 31 Neb. App. 473

Because Annette never managed to demonstrate compliance with the safety provisions, she never progressed beyond supervised visitation with A.K. Under the parenting plan, the parties were to agree on a supervisor or a professional supervisor could be hired at Annette's expense. Mark testified that he initially agreed to personally supervise visits, which would occur two to three times a week through the end of 2019 and into 2020. However, Mark refused to continue supervising visits after an incident on July 31, 2020, in which Annette drove off with A.K. and maintained physical custody of her for 10 days without supervision. A.K. was not returned to Mark's custody until August 10, when Annette was arrested on an outstanding warrant for charges related to a dangerous dog. Although Mark was understandably upset about the incident, Mark and Barbara both testified that no harm came to A.K. According to Mark and Barbara, A.K. believed that she was supposed to be with Annette, describing the 10-day period as a "vacation."

Because Mark refused to supervise visits, and no alternate third-party supervisor was agreed to, it appears that Annette has not had even supervised visitation with A.K. since the incident in August 2020. Mark testified that Annette continued to seek visitation, albeit intrusively, by unexpectedly showing up at Mark's house for visitation without an approved supervisor. Mark indicated that these attempted visits would often devolve into shouting and that law enforcement would be called to intervene. Barbara testified that A.K. was often present to observe these chaotic incidents.

Although supervised visits were not occurring, Mark testified that Annette and A.K. continued to have telephone contact up to six times a week, most of which were initiated by Annette. Mark testified that the conversations were appropriate and that such contact did not appear to be in any way harmful to A.K. Although Mark testified that A.K. had expressed some hesitancy to talk with Annette following the

- 479 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
KITSMILLER v. KITSMILLER
Cite as 31 Neb. App. 473

May 2021 incident, he also testified that A.K. loves Annette and wanted to talk to her "[m]ost of the time."

Mark testified that he did not think Annette would ever hurt A.K. Rather, Mark's primary concern was that Annette would refuse to return A.K. to his custody if given unsupervised parenting time. Mark testified that he would be comfortable with continued visitation between Annette and A.K. so long as there was a supervisor present to ensure A.K. is returned. With respect to whether termination of Annette's parental rights was in A.K.'s best interests, Mark cited concerns regarding Annette's unsuitable housing, inadequate means of support, and mental health. However, Mark also acknowledged that the 2019 decree contained safety provisions specifically directed at each of these concerns.

## 2. Procedural Background

The transcript on appeal indicates that the present proceedings were originally initiated by Annette in May 2020, when she filed an affidavit and application for order to show cause, alleging that Mark had contemptuously denied her visitation rights under the 2019 decree. Mark was ordered to appear before the district court for Lancaster County and show cause why he should not be held in contempt. Thereafter, on August 7, 2020, Mark filed two motions in relation to Annette's unauthorized custody of A.K. from July 31 to August 10. Mark styled the first motion as a motion for citation for contempt, alleging that Annette violated the parenting plan by exercising unauthorized parenting time and refusing to allow Mark telephone contact with A.K. Mark styled the second motion as an ex parte motion to have A.K. returned to his custody. The court immediately granted both motions, ordering Annette to return A.K. to Mark's custody and to appear and show cause as to why she should not be held in contempt. Thus, as of August 7, both parties were ordered to appear before the district court and show cause as to why they

- 480 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
KITSMILLER v. KITSMILLER
Cite as 31 Neb. App. 473

should not be held in contempt for violating the terms of the parenting plan.

A hearing was apparently held on August 13, 2020, after which the court appointed a guardian ad litem for Annette. A supplemental transcript reveals a brief order entered on August 18, in which the court vacated the order for Mark to show cause on the grounds that Annette failed to appear at a hearing thereon. With respect to the order for Annette to show cause, the court continued the matter, and it remained pending when Mark filed his complaint for modification and termination of parental rights on August 26.

In his complaint, Mark alleged that a material change in circumstances had occurred, to wit: statutory grounds to terminate Annette's parental rights existed under Neb. Rev. Stat. § 43-292(2), (3), (5), and (9) (Reissue 2016), and that termination of Annette's parental rights was in A.K.'s best interests. Accordingly, Mark requested an order terminating Annette's parental rights or, in the alternative, modifying the decree and parenting plan to suspend any and all visitation between Annette and A.K. On September 9, Mark filed a motion for determination of appropriate forum pursuant to Neb. Rev. Stat. § 42-364(5) (Cum. Supp. 2020). On October 7, the district court entered an order transferring to the juvenile court "all currently pending matters to include the Complaint for Modification and Termination of Parental Rights and Order to Show Cause." Despite this reference to the pending order to show cause, there was no further discussion of that order on the record until near the end of trial when it was brought to the attention of the juvenile court.

On January 11, 2021, the juvenile court entered an order accepting the transfer of the case from the district court. Following a number of discovery-related delays and pretrial motions, a trial on Mark's complaint was held on May 13 and 14. After trial, the juvenile court entered an order dismissing the complaint on the grounds that "there has not been a material change in circumstances since the entry of the Decree that

would warrant the requested modification, to include a request for termination of [Annette's] parental rights." The court further "vacated and dismissed without prejudice" any pending orders to show cause and overruled Mark's requests for sanctions and attorney fees. Mark appealed.

## III. ASSIGNMENTS OF ERROR

Mark assigns, restated and reordered, that the juvenile court erred in (1) failing to terminate Annette's parental rights, (2) failing to otherwise modify the 2019 custody arrangement, (3) vacating the pending order to show cause, and (4) overruling Mark's requests for sanctions and attorney fees.

## IV. ANALYSIS

Mark's complaint raised two primary questions for review. First, Mark alleged that Annette's parental rights should be terminated under § 43-292. Regardless of whether this matter was tried in district court or transferred to the juvenile court, § 42-364(5) provides that the question of termination be answered according to the Nebraska Juvenile Code. Second, if termination of Annette's parental rights was unsuccessful, Mark alleged that there was nevertheless a material change in circumstances warranting modification of the 2019 decree and parenting plan to suspend "any and all visitation" between Annette and A.K. The juvenile court answered both questions in the negative, finding the record failed to demonstrate that termination of Annette's parental rights was in the best interests of A.K. and finding that Mark had failed to prove a material change in circumstances warranting modification. Because we agree with the juvenile court in both respects, we affirm the order of the juvenile court dismissing Mark's complaint.

### 1. Termination of Parental Rights

#### (a) Standard of Review

[1] Both parties on appeal suggest that we review the juvenile court's order de novo on the record and affirm in

- 482 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
KITSMILLER v. KITSMILLER
Cite as 31 Neb. App. 473

the absence of an abuse of discretion, because that is the standard of review applicable to actions for modification of a judgment or decree relating to child custody, visitation, or support. See *Windham v. Kroll*, 307 Neb. 947, 951 N.W.2d 744 (2020). However, Mark's complaint sought modification only in the alternative to his request that Annette's parental rights be terminated. Termination of parental rights cases, even when raised under § 42-364(5), are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. See *Kenneth C. v. Lacie H.*, 286 Neb. 799, 806, 839 N.W.2d 305, 311 (2013) ("[a]lthough this is not a typical juvenile case governed exclusively by the Nebraska Juvenile Code, . . . the standard of review applicable to juvenile cases is applicable here").

### (b) Analysis

With respect to termination, the court found that "the restrictions outlined in the Parenting Plan provide the necessary protections for [A.K.] such that the drastic step of terminating parental rights is unnecessary at this time and not in [A.K.'s] best interests." The court acknowledged Annette's shortcomings and Mark's understandable frustration. However, the court noted that Annette and A.K. appeared to be bonded, pointing to prior visitation when Mark was willing to supervise and continued telephone contact. Ultimately, the court concluded, "There are other options that can be utilized, short of termination of parental rights, to ensure [A.K.'s] safety and satisfy the concerns of [Mark], while also facilitating an ongoing relationship between [Annette] and [A.K.]" Namely, the court encouraged the parties to implement the terms of the parenting plan "as strictly written, as opposed to how the [parties] had quite loosely followed the plan in the past."

On appeal, Mark argues the court erred in "not analyzing" the issue of termination. Mark argues that the juvenile court simply failed to address either prong of the termination

- 483 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
KITSMILLER v. KITSMILLER
Cite as 31 Neb. App. 473

analysis. Although Mark is correct that the juvenile court's order does not explicitly address the statutory grounds for termination, the court did explicitly find that termination was not in the best interests of A.K. at this time, and we agree.

[2,3] Under Nebraska law, terminating parental rights requires both clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and clear and convincing evidence that termination is in the best interests of the children. See *In re Interest of Donald B. & Devin B.*, 304 Neb. 239, 933 N.W.2d 864 (2019). Termination of parental rights is a final and complete severance of the child from the parent and removes the entire bundle of parental rights. *In re Interest of Justin H. et al.*, 18 Neb. App. 718, 791 N.W.2d 765 (2010). With such severe and final consequences, parental rights should be terminated only in the absence of any reasonable alternative and as the last resort. *Id.*

It is important to identify precisely what is at stake as it relates to the termination of Annette's parental rights under the unique circumstances of this case. The detailed terms of the parenting plan already limit Annette's parenting time to fully supervised visitation until she can demonstrate compliance with all the safety provisions. Because Mark is now refusing to supervise visits, even Annette's supervised visitation is essentially suspended until such time as the parties agree on a third-party supervisor or Annette obtains funds sufficient to hire a professional supervisor. Annette has much progress to make before any form of unsupervised parenting time would be contemplated; however, the safety provisions were specifically designed to ensure A.K.'s safety while Annette continues to strive toward the stability she demonstrated from 2013 to 2017. Moreover, Annette and A.K. have continued to have frequent telephone communication, and, despite Annette's challenges, the record suggests they continue to share a loving mother-daughter relationship.

Annette's unauthorized custody of A.K. in August 2020 is certainly concerning; however, it appears A.K. was not harmed

- 484 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
KITSMILLER v. KITSMILLER
Cite as 31 Neb. App. 473

by the incident, and Mark himself testified that he is not concerned about Annette's hurting A.K. Rather, Mark's primary concern is that Annette might refuse to return A.K. if given unsupervised parenting time. Under the present restrictions, Annette will have only supervised parenting time for the foreseeable future. We note that Mark did testify that he would be comfortable with continued visitation between Annette and A.K. so long as an appropriate supervisor is present to ensure A.K.'s return.

Although the juvenile court did not conduct an explicit analysis of the statutory grounds for termination, such was unnecessary in light of the court's finding that termination was not in A.K.'s best interests. Even if we assume that Mark proved one or more statutory grounds for termination by clear and convincing evidence, we nevertheless agree with the juvenile court that the "drastic step" of terminating Annette's parental rights is neither necessary nor in A.K.'s best interests at this time. Accordingly, we affirm the order of the juvenile court dismissing Mark's request for termination of Annette's parental rights.

## 2. Modification

### (a) Standard of Review

[4] Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion. *Windham v. Kroll*, 307 Neb. 947, 951 N.W.2d 744 (2020).

### (b) Analysis

With respect to modification, the court found that "[Annette's] current situation does not establish a material change in circumstances, as her overall life situation appears to be the very facts upon which the restrictive Parenting Plan was developed at the time of the 2019 dissolution proceeding." The court acknowledged Annette's persistent failure to comply

- 485 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
KITSMILLER v. KITSMILLER
Cite as 31 Neb. App. 473

with the safety provisions in the parenting plan, noting specific violations such as Annette's failure to adequately address her mental health, her lack of sobriety, her inability to abstain from criminal behavior, and her lack of suitable housing and income. However, the court observed that the safety provisions in the parenting plan were specifically designed, and remained adequate, to address the safety concerns raised by Annette's behavior. We agree.

[5,6] Prior to modification of a child custody order, two steps of proof must be taken by the party seeking modification. *Weaver v. Weaver*, 308 Neb. 373, 954 N.W.2d 619 (2021). First, the party seeking modification must show by a preponderance of the evidence a material change in circumstances that has occurred after the entry of the previous custody order and that affects the best interests of the child. *Id.* Second, the party seeking modification must prove that changing the child's custody is in the child's best interests. *Id.* Generally speaking, a material change in circumstances is the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Id.*

[7] Mark generally points to Annette's continued failure to comply with the safety provisions in the parenting plan as the material change in circumstances warranting the suspension of all visitation between Annette and A.K. The guardian ad litem for A.K., in a report to the juvenile court, opined that the incident of Annette's unauthorized custody of A.K. amounted to a material change in circumstances warranting modification of the custody arrangement. However, the juvenile court disagreed, and the weight given to the opinion of a guardian ad litem is in the trial court's discretion. See *Beran v. Beran*, 234 Neb. 296, 450 N.W.2d 688 (1990). In any case, even if we assume that a material change in circumstances affecting A.K.'s best interests had occurred since the entry of the 2019 decree, we must nevertheless examine whether the requested modification is in A.K.'s best interests.

- 486 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
KITSMILLER v. KITSMILLER
Cite as 31 Neb. App. 473

Mark requested that the decree and parenting plan be modified to suspend any and all visitation between Annette and A.K. "until such time as [Annette] was able to show compliance with the safety provisions." Brief for appellant at 38. Annette is already limited to fully supervised visitation unless and until she demonstrates compliance with the safety provisions, and Mark himself testified that he would be comfortable with continued visitation so long as it was supervised. In this way, Mark failed to meet his burden to prove that further limiting Annette's parenting time by suspending even supervised visitation was in A.K.'s best interests. To the contrary, we agree with the juvenile court that adherence to the current parenting plan, if implemented as written, remains in A.K.'s best interests.

### 3. Order to Show Cause

#### (a) Standard of Review

[8] In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *In re Interest of Zachary D. & Alexander D.*, 289 Neb. 763, 857 N.W.2d 323 (2015).

#### (b) Analysis

Mark assigns that the juvenile court erred in vacating the pending order for Annette to show cause as to why she should not be held in contempt for her unauthorized custody of A.K. in August 2020. Mark argues the evidence clearly establishes that Annette's conduct amounted to willful disobedience of the custody order, such that Annette should have been held in contempt and subjected to an appropriate purge plan. Annette counters that she was not advised of her rights or the allegations against her and that no hearing on the issue of

- 487 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
KITSMILLER v. KITSMILLER
Cite as 31 Neb. App. 473

contempt was scheduled or held. Accordingly, Annette argues the matter of contempt was properly "reserved" by the juvenile court and should be set for further hearing on the specific allegations of contempt. Brief for appellee at 23. Both parties agree that the juvenile court was apparently unaware of the pending order to show cause until near the end of the trial on Mark's complaint.

[9,10] When a party to an action fails to comply with a court order made for the benefit of the opposing party, such act is ordinarily civil contempt, which requires willful disobedience as an essential element. *In re Interest of Zachary D. & Alexander D., supra*. Outside of statutory procedures imposing a different standard, it is the complainant's burden to prove civil contempt by clear and convincing evidence. *Id.*

The record is clear that Annette's unauthorized custody of A.K. from July 31 to August 10, 2020, was a violation of the parenting plan in multiple respects. However, the juvenile court did not make any findings of fact as to the willfulness of this violation. Although the circumstances of that incident were discussed at trial, consideration of those facts was confined to the issues of termination and modification. Indeed, the court was apparently unaware of the pending contempt issue until near the end of trial. The court did not make any determination as to whether the incident amounted to contempt. Rather, the court vacated and dismissed the pending order to show cause without prejudice. Under the circumstances of this case, we conclude the juvenile court's dismissal without prejudice of the pending order to show cause was not an abuse of discretion. The matter of Annette's alleged contempt may be set for further hearing upon subsequent application to the district court.

### 4. SANCTIONS AND ATTORNEY FEES

#### (a) Standard of Review

[11] A trial court's determination of requests for sanctions and for attorney fees are both reviewed for an abuse

- 488 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
KITSMILLER v. KITSMILLER
Cite as 31 Neb. App. 473

of discretion. See, *Cornwell v. Cornwell*, 309 Neb. 156, 959 N.W.2d 243 (2021); *Malicky v. Heyen*, 251 Neb. 891, 560 N.W.2d 773 (1997).

### (b) Analysis

Mark lastly assigns that the juvenile court erred in overruling his motions for sanctions and attorney fees. Mark's requests were primarily based on Annette's lack of participation in depositions and her failure to produce requested documents. Mark requested that Annette be precluded from presenting certain evidence due to her lack of cooperation with discovery, and he sought reimbursement for the costs associated with the missed depositions.

The court acknowledged that Annette failed to appear for two scheduled depositions and participated only minimally in a third. However, the court also noted that there was some evidence of justification for the two missed depositions, and the third deposition occurred without notice shortly after Annette became incarcerated. The court thereafter employed procedural safeguards to limit the prejudicial effect of Annette's limited cooperation, including providing opportunities for Mark to discover and present additional evidence in response to any unforeseen evidence provided by Annette at trial. Noting Annette's current indigence, the court ultimately stated, "While the Court sympathizes with [Mark's] situation and the costs incurred to litigate this modification . . . assessing trial costs or expenses to [Annette] is not appropriate given the facts of this particular case." We find no abuse of discretion in the juvenile court's decision.

## V. CONCLUSION

For the foregoing reasons, we affirm the order of the juvenile court dismissing Mark's complaint, vacating the pending order to show cause, and overruling Mark's motions for sanctions and attorney fees.

AFFIRMED.