IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


PEKAREK V. PEKAREK


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


RACHAEL A. PEKAREK, APPELLANT,

V.

SHAUN M. PEKAREK, APPELLEE.


Filed July 11, 2023.    No. A-22-735.


Appeal from the District Court for Nemaha County: JULIE D. SMITH, Judge. Affirmed.

Angelo M. Ligouri, of Ligouri Law Office, for appellant.

Ryan K. McIntosh, of Brandt, Horan, Hallstrom & Stilmock, for appellee.


RIEDMANN, BISHOP, and WELCH, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Rachael A. Pekarek appeals from the order of the Nemaha County District Court that found her in contempt. On appeal, she assigns error to various factual findings of the district court, to the finding that the parties share legal custody of the children, as well as to the finding that she was in contempt. After reviewing the record, we affirm the order of the district court.

## BACKGROUND

Rachael and Shaun M. Pekarek were married in 2011, and the marriage was dissolved by a decree issued in 2014; the parties have two children. The parties entered into a stipulated parenting plan that awarded Rachael sole legal and physical custody of the children with parenting time set forth for Shaun. The dissolution decree, however, states

The parties agree that it would be in the best interest of the minor children of the parties, [], that [Rachael] and [Shaun] have joint legal custody, and [Rachael] have sole physical

custody of said minor children, subject to visitation with [Shaun] as set forth in the Parenting Plan attached hereto as Exhibit "1".

Therefore, the agreement as to joint legal custody referenced in the decree differs from the agreement as to legal custody in the parenting plan.

Since the 2014 entry of the decree, it has been modified, but no issue was raised with respect to legal custody of the parties' children. Pursuant to the parenting plan, Shaun had parenting time on alternating weekends and on every Wednesday evening; a holiday schedule was also provided. In June 2022, Shaun filed an application for contempt, alleging that Rachael had refused him parenting time with the children. Specifically, Shaun alleged that beginning in March, Rachael had severed contact between Shaun and the children. An order to show cause was issued. Rachael filed a denial of the allegations of contempt, as well as a complaint to modify which asked for a change in parenting time and any other relief the court deemed just and equitable.

The district court ordered mediation and scheduled an evidentiary hearing. At the evidentiary hearing both Shaun and Rachael testified, as did the parties' children, who testified outside the presence of the parties and whose testimony was sealed; Shaun's wife and older stepson also testified. At the time of trial, the parties' daughter was 14 years old, and the parties' son was 10 years old.

Evidence presented at the hearing showed that in September 2021 Rachael found letters written by the parties' daughter which led Rachael to believe there was inappropriate contact between the daughter and Shaun's older stepson. Rachael contacted Shaun, and he looked through the daughter's room at his home but could not find anything related to this issue. Shaun spoke with his wife, and they spoke with Shaun's stepson, who told them nothing was going on; Shaun also looked through his stepson's phone. Shaun believed he had fully investigated the matter and he did not believe that any inappropriate relationship had occurred. There was no interruption of Shaun's parenting time after the incident in September. Shaun's stepson testified that he and the parties' daughter had never had any inappropriate contact. Shaun testified that he rarely leaves the children by themselves except when everyone was going to sleep.

Shaun was to have parenting time the weekend of March 18, 2022, but when he messaged Rachael about it, she told him the children were on spring break and he could not have his parenting time. He was able to exercise his parenting time on the weekend of April 2, but that was the last time he had had parenting time until the hearing. Rachael testified that when she looked through the daughter's belongings after the children returned from Shaun's parenting time the weekend of April 2, she found additional items that made her believe that the daughter and Shaun's older stepson were involved in an inappropriate relationship. Rachael decided to contact her lawyer to see what her options were.

A text message shows that Shaun asked to see the children in April 2022 but was told that Easter was Rachael's weekend pursuant to the parenting plan, and that the weekend after was also her weekend. On April 29 Shaun sent a text message to Rachael asking about plans for exchanging the children that weekend and Rachael informed him that the children had plans. In May, Racheal's attorney contacted Shaun and asked him to attend mediation. The letter the attorney sent to Shaun also notified him that Rachael had suspended visitation for the safety and welfare of the children. Later in May, Rachael informed Shaun in a text message that she had full legal and physical

custody and that he "had visitation rights only. And those have been suspended. By me." At the hearing, Rachael confirmed her belief that as the custodial parent, she had the right to make decisions that were in the best interests of the children, and that if Shaun's "input is not in the best favor of the children, then regardless of [Shaun's input]," it was her job to make those decisions.

Rachael stated that she did not sever Shaun's parenting time, but that she only suspended it so they could work out safety issues. Rachael stated that suspending meant she was not taking away Shaun's visitation or trying to take the children from their father, but she was making sure that the children would be in a safe space. She confirmed her belief that as the legal custodian, she had the authority and responsibility to make fundamental decisions regarding the children's welfare, including exerting continuous parenting time for sufficient periods of time. She confirmed her belief that the children's health and welfare were in jeopardy during their visits.

Rachael testified that in September 2021, when Shaun told her he would take care of it she hoped he would, but when she found the information in April 2022, she was concerned that things had not been addressed. She said that she had attempted to work things out with Shaun but that he kept "blowing [her] off." Rachael claimed she thought suspending visitation so that the parties could go to mediation would resolve things without court intervention.

Information regarding other issues was also presented. There was evidence that in early 2021, Shaun "slam[med]" the parties' son's head into a wall. Shaun denied that he had slammed his son's head into a wall but acknowledged that his son did not want to see him after an incident that occurred at his house. The children missed their next scheduled parenting time with Shaun after the incident, but then parenting time resumed as it had been. Rachael alleged that the children were allowed to drink alcohol at Shaun's home. Shaun testified that on New Year's Eve, the parties' daughter started to take a drink of his wife's drink and he told her to put it down and walk away, which she did. Shaun stated that he does not allow the children to drink alcohol in his home or outside of his home.

Additionally, there was evidence that Shaun had, while communicating with the parties' daughter, referred to Rachael as the daughter's "egg donor." There was also testimony that on previous occasions, Shaun would drink alcohol in the vehicle while driving with the children in the vehicle.

In its order following the hearing, the district court noted there was "ambiguity" between the parenting plan and the divorce decree with regard to legal custody. Before analyzing whether Rachael would be held in contempt, the district court observed that the parenting plan was not signed by the district court judge who presided over the parties' divorce, but the divorce decree was. It, therefore, determined that the parties had joint legal custody. As it related to the issue of contempt, the district court noted that even a parent with sole legal custody did not have the unfettered right to suspend the other parent's parenting time unilaterally and without any effort to seek court approval of the deviation of court ordered parenting time.

The district court found the delay of time between Rachael first approaching Shaun about her concerns regarding the parties' daughter and Shaun's older stepson and her decision to suspend parenting time to be concerning. The district court also found that any allegations that the parties' daughter and Shaun's older stepson engaged in sexual contact were unsubstantiated. It noted that Rachael acted on her own without leave of court, and that she could have requested an ex parte order from the district court to determine temporary custody and to place restrictions on parenting

time to ensure the children's safety. While the district court acknowledged that Rachael attempted to mediate the matter, the children had not seen their father all summer without any court order in place to allow for suspension of Shaun's parenting time.

The district court found Shaun had met his burden by clear and convincing evidence to show that Rachael was in willful contempt of court for failing to allow him to exercise his weekend parenting time between March 2022 and the date the contempt action was filed in June 2022. (We note, however, that Shaun exercised parenting time the weekend of April 2.) Rachael was ordered to serve 30 days in jail beginning on January 5, 2023. She was ordered to pay Shaun's attorney fees in the amount of $1,500, by November 15, 2022, as well as accrued interest. The district court stated that Rachael could purge herself of the contempt by ensuring the children attended all parenting time with Shaun between the date of the order and January 5, 2023. It also temporarily ordered certain conditions during parenting time, including conditions related to alcohol consumption and the supervision required of the parties' daughter around her stepbrothers. Rachael appeals.

## ASSIGNMENTS OF ERROR

Rachael assigns several errors on appeal. She alleges the district court erred (1) in finding that the parties' daughter's testimony about Shaun's younger stepson was not relevant for the contempt action; (2) in determining that the parties had joint legal custody and terminating her sole legal custody; (3) in determining that Rachael made an "unfettered" suspension of Shaun's visitation (4) in determining that a several months' elapse was too long for Rachael to be truly concerned about the safety and welfare of the minor children while on visits; (5) in determining Rachael was in willful contempt within the same order in which the district court modified the parenting plan on visitation to address the same issues/concerns that Rachael tried to address with Shaun individually and through mediation, which he refused, thus creating Shaun's allegations for contempt against her; (6) in sanctioning her to serve 30 days in jail beginning January 5, 2023, without stating the facts on which she was determined to be in contempt of the parenting plan adopted by the court; (7) in sanctioning her to pay $1,500 in attorney fees in full by November 15, 2022, with interest accruing immediately, without allowing her to purge herself of the contempt; and (8) that the district court's order violates public policy and the fundamental rights of the custodial parent pursuant to the parties' agreed upon parenting plan, constituting an abuse of discretion.

## STANDARD OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *Kitsmiller v. Kitsmiller*, 31 Neb. App. 473, 983 N.W.2d 147 (2022).

A trial court's determination of requests for sanctions and for attorney fees are both reviewed for an abuse of discretion. *Id*.

- 4 -

ANALYSIS

*Evidence Regarding Shaun's Younger Stepson.*

Rachael argues the district court erred in finding that allegations against Shaun's younger stepson were not relevant for the contempt action. Because these allegations were made in the privacy of the court's chambers and are contained in the sealed transcripts, we will not repeat them here. The district court found that there was no evidence that either party was aware of these allegations and that they were not relevant for the contempt action, although they may be relevant for the purpose of a temporary order.

Rachael argues that Nebraska law does not require her to know the exact person causing harm to her children, and that the evidence clearly established that she knew harm was occurring. She argues that the evidence was relevant because it supported her decision to suspend Shaun's parenting time.

We note that the information related to this issue was not excluded from evidence; rather, the district court found it not relevant for purposes of determining whether Rachael was in contempt. The issue before this court on appeal, therefore, is whether the district court erred in finding it not relevant to its contempt analysis.

Because there was no evidence that Rachael was aware of these allegations, it could not have been a basis for her decision to suspend Shaun's parenting time. Furthermore, as will be discussed later in this opinion, the district court did not abuse its discretion in finding Rachael in contempt for unilaterally suspending Shaun's parenting time. Even if the allegations related to Shaun's younger stepson had been considered by the district court, Rachael did not have the authority to suspend Shaun's court approved parenting time without seeking approval from the district court.

*Legal Custody.*

Rachael assigns the district court erred in determining the parties had joint legal custody thereby terminating her sole legal custody. She argues that the parties agreed that she would have sole legal and physical custody in their signed parenting agreement and that the agreement was "adopted and incorporated 'in total' within the Court's decree by the [judge] on the record at the final hearing of dissolution of marriage on June 11, 2014." Brief for appellant at 18. While we agree that the parenting plan attached to the 2014 decree provides for Rachael's sole legal and physical custody, the divorce decree states

> The parties agree that it would be in the best interest of the minor children of the parties, [], that [Rachael] and [Shaun] have joint legal custody, and [Rachael] have sole physical custody of said minor children, subject to visitation with [Shaun] as set forth in the Parenting Plan attached hereto as Exhibit "1".

Rachael provided this court with the record of the dissolution hearing to support her position that the court adopted and incorporated the parenting plan into the decree and that she was awarded sole legal custody. The Nebraska Supreme Court has stated "once the court adopts the agreement and sets it forth as a judgment of the court with corresponding ordering language, the

contractual character of the property settlement agreement is subsumed into the court-ordered judgment." *Rice v. Webb*, 287 Neb. 712, 723, 844 N.W.2d 290, 298 (2014).

Here, the decree makes no reference to the parenting plan being adopted and incorporated; rather, the language of the decree references the parenting plan only in conjunction with Shaun's visitation schedule. A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including a settlement agreement incorporated therein, is determined as a matter of law from the four corners of the decree itself. *Vyhlidal v. Vyhlidal*, 311 Neb. 495, 973 N.W.2d 171 (2022). It is inherent to a judgment's finality that all are bound by the original language used, and all ought to interpret the language the same way. *Bayne v. Bayne*, 302 Neb. 858, 925 N.W.2d 687 (2019). See also *Neujahr v. Neujahr*, 223 Neb. 722, 393 N.W.2d 47 (1986) (even when "interpretation" of decree is necessary interpretation will be based upon language of decree and not based upon what parties believed court meant but did not say).

Therefore, although the parenting plan is attached to the decree, it was not adopted and incorporated into the decree and the plain language of the decree awards the parties joint legal custody. Consequently, the district court did not err in determining the parties' shared joint legal custody.

*Suspension of Visitation.*

Rachael argues the district court erred in determining she made an "unfettered" suspension of Shaun's visitation at his residence. She argues that prior caselaw lends support to the idea that if a custodial parent has concerns about the child's mental, emotional, or physical wellbeing, they need not force the child to visit with the other parent just because a parenting plan is in place and that the courts must look at the custodial parent's conduct. Rachael is essentially arguing the district court erred in finding her in willful contempt. We disagree. When a party to an action fails to comply with a court order made for the benefit of the opposing party, such act is ordinary civil contempt, which requires willful disobedience as an essential element. *Kitsmiller v. Kitsmiller*, 31 Neb. App. 473, 983 N.W.2d 147 (2022). Outside of statutory procedures imposing a different standard, it is the complainant's burden to prove civil contempt by clear and convincing evidence. *Id*.

Here, Shaun showed that Rachael made the decision to stop his parental visitation with their children. While Rachael sought mediation, she did not seek a court order or ask the court to intervene. The letter Shaun received from her attorney stated that Rachael had suspended visitation for the safety and welfare of the children, and that Rachael was willing to go to mediation. Rachael informed Shaun that he had only visitation rights and that she was suspending those rights. This shows she was aware that Shaun was entitled to court ordered visitation, and that she was not going to allow him to exercise those rights. But Rachael did not have the authority to unilaterally determine if Shaun could exercise his parental visitation.

It is understandable that a parent, believing her child to be in an unsafe environment, would wish to take steps to protect that child. But here, Rachael chose to take steps without regard to the parental visitation schedule ordered by the court. Rachael's belief that her child was in an unsafe environment when she attended parenting time with Shaun, regardless of whether she believed she had sole custody, did not give her the ability to "suspend" Shaun's court ordered parenting time

without seeking approval from the district court. The district court did not err in finding Rachael to be in contempt of the parenting plan.

*Delay in Suspending Visits.*

Rachael argues the district court erred in determining she waited too long a period of time to truly be concerned about the children's safety on visitation. At issue here is Rachael's discovery of the information in September 2021, after which she did not suspend visits, and her discovery in April 2022, after which she suspended visits. But even assuming, solely for the sake of argument, that Rachael did not wait an unreasonable amount of time, or that waiting to take action until finding additional information in April was reasonable, this does not change the outcome of this case. It is the steps Rachael took to address the issues that caused her to be in contempt, not her reasons or the timeframe she chose for taking the action. The length of time involved does not change the fact that Rachael did not have the authority to suspend visits without seeking intervention from the district court.

*Contempt Finding and Temporary Order.*

Rachael argues the district court erred in finding her in willful contempt of the parenting plan and in the same order amending the parenting plan to disallow the very conduct she was refusing to allow for the best interest, safety, and welfare of the minor children. She argues she stopped visitation specifically to mediate the very concerns outlined within the district court's temporary order which amended the parenting plan; she argues she should not be held in willful contempt of the parenting plan for seeking the same safety and protection for her children that the district court adopted within its order of contempt.

Again, Rachael focuses on the reasons behind her conduct, rather than her conduct. It was not the reason she took her actions, nor the outcome she desired due to her actions, but the actions themselves that placed her in contempt of the district court's parental visitation order. We see no issue with the district court finding Rachael to be in contempt of the parenting plan, and at the same time entering a temporary order placing restrictions on visits to address issues that had been raised in the contempt proceedings. A court's continuing jurisdiction over a dissolution decree includes the power to provide equitable relief in a contempt proceeding. *Martin v. Martin*, 294 Neb. 106, 881 N.W.2d 174 (2016). Where a situation exists that is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation. *Id*. The contempt proceedings alerted the court to situations which it chose to remedy through the temporary order and it had the authority to do so. See Neb. Rev. Stat. § 42-364.15 (Reissue 2016). This assigned error fails.

*Factual Findings.*

Rachael argues the district court erred in sanctioning her to serve 30 days in jail without stating the facts on which she was determined to be in contempt of the parenting plan adopted by the district court. But the district court did make factual findings in its order. It stated that Rachael "unilaterally suspended [Shaun's] parenting time without approval of the court." The district court analyzed the evidence presented at trial, organized it into a statement of facts, and then determined that, based on those facts, Rachael refused to follow the district court's order regarding parenting

time. The order of contempt makes clear what conduct constituted contempt in this matter, and it is clear to Rachael what conduct she must change in order to avoid future findings of contempt.

*Attorney Fees.*

Rachael argues the district court erred in sanctioning her to pay $1,500 in attorney fees in full by November 15, 2022, with interest accruing immediately, without allowing her to purge herself of the contempt. She interprets the order to pay attorney fees as part of the sanction for contempt of which she may purge herself, rather than an award of attorney fees. She bases this interpretation on its inclusion in the portion of the order entitled "Sanction." While we understand her argument, we interpret the order as imposing a jail sentence for contempt while also making a separate award of attorney fees to Shaun.

Neb. Rev. Stat. § 42-370 (Reissue 2016) provides that costs, including a reasonable attorney fee, may be taxed against a party found to be in contempt. Here, although the award of attorney fees is in the portion of the order that lays out the sanction for contempt, along with how Rachael may purge herself of the contempt, they are separate. In the sentence immediately following the imposition of the jail sentence to begin January 5, 2023, the district court states, "She is also ordered to pay [Shaun's] attorney's fees in the amount of $1,500.00. Said attorney's fees shall be paid in full by November 15, 2022[,] and shall accrue interest at the rate of 4.567% per annum, beginning immediately." In the next paragraph, the district court provides that Rachael may purge herself of contempt by ensuring that the minor children attend all parenting time with Shaun as outlined in the parenting plan between the entry of the order of contempt and the start of the jail sentence, including additional make up parenting time over Thanksgiving and Christmas.

We believe the order is clear that Rachael was sentenced to 30 days' jail as a sanction for being in contempt, and she may purge herself of such contempt by following the parenting time scheduled. The order also orders her to pay an award of attorney fees. This is separate from the sanction for contempt. The district court had the authority to award attorney fees, and it did not abuse its discretion in doing so.

*Public Policy.*

Rachael argues the district court's order violates public policy and the fundamental rights of the custodial parent pursuant to the parties' agreed upon parenting plan, constituting an abuse of discretion. She argues she suspended parenting time not to "simply harm Shaun's visitation, but specifically to correct the negative environment that her children were being subjected to on visitation." Brief for appellant at 35. As stated above, the issue is not the reasoning behind Rachael's conduct. The issue on which she was found to be in contempt was in her decision to simply ignore the court ordered parental visitation given to Shaun. Rachael had other options available to her to address the harm she believed was being caused to her children that would not have been in violation of the court order. She chose not to exercise those options. She made the decision to unilaterally suspend visitation, and the district court correctly determined that such action was a willful violation of a court order.

## CONCLUSION

We find no abuse of discretion in the district court's order finding Rachael in contempt and in awarding attorney fees to Shaun. We affirm the judgment of the district court.

AFFIRMED.